**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION**

| | |
|---|---|
| **Craig Pederson,**<br><br>                    **Plaintiff,**<br><br>    **v.**<br><br>**AAA Collections, Inc.,**<br><br>                    **Defendant.** | Case No.    22-cv-4166<br><br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff Craig Pederson ("Plaintiff" or "Pederson") brings this Class Action Complaint against AAA Collections, Inc. ("AAA" or "Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information, including full names and Social Security numbers (collectively, "PII").

2.      Defendant AAA is a third-party collection and debt resolution services company located in Sioux Falls, South Dakota.

3.      On September 7, 2022, Defendant identified a cyber incident in which an unauthorized third party accessed, copied, and stole documents from Defendant's computer network (the "Data Breach").

1

4.     Defendant conducted an investigation and determined that files from its network were accessed and stolen for three consecutive days, from September 5, 2022, through September 7, 2022.

5.     Defendant reviewed the data that was obtained in the Data Breach and Defendant confirmed that the data contained names and Social Security numbers of individuals who AAA previously obtained their PII.

6.     Despite learning of the Data Breach in early September 2022, Defendant did not begin notifying the impacted individuals, Plaintiff and Class Members until on or around November 16, 2022, or later. Defendant delayed in sending notice of the Data Breach even though Defendant is well aware of the need to move quickly in responding to Data Breach events due to the nature of its business and the sensitive information it maintains.

7.     As a result of the Data Breach, 56,848 individuals, including Plaintiff and other Class Members, suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft.[1]

8.     By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted PII impacted during the Data Breach included names and Social Security numbers.

9.     The exposed PII of Plaintiff and Class Members can—and likely will—be sold on the dark web.  Hackers can offer for sale the unencrypted, unredacted PII to criminals.  Plaintiff

---

[1]   https://apps.web.maine.gov/online/aeviewer/ME/40/b853362c-e2c9-45be-ba1e-d91bf2610e29. shtml (last visited: Nov. 24, 2022).

and Class Members now face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers – the gold standard for identity thieves.

10.     This PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiff and Class Members. In addition to Defendant's failure to prevent the Data Breach, after discovering the breach, Defendant waited several months to report it to government agencies and affected individuals.

11.     As a result of this delayed response, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

12.     Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

13.     Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (iv) the continued and substantially increased risk to their PII which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in

Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

14.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

### Plaintiff Craig Pederson

15.    Plaintiff Craig Pederson is a resident and citizen of South Dakota, residing in Madison, South Dakota. Mr. Pederson received a "Notice of Security Incident" letter from AAA, dated on or around November 16, 2022, by U.S. Mail.

### Defendant AAA Collections, Inc.

16.    Defendant AAA Collections, Inc. is a corporation organized under the laws of South Dakota, and its United States headquarters and principal place of business is located at 3500 S. 1st Ave Cir, Suite #100, Sioux Falls, South Dakota 57105.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of

$5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class are citizens of a state different from Defendant.

18.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

19.    Venue is proper under 18 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

## FACTUAL ALLEGATIONS

### *Background*

20.    Defendant AAA is a South Dakota-based debt recovery agency that serves thousands of clients to recover unpaid debts.

21.    As part of its business, Defendant AAA collects sensitive PII from its clients' customers in order to provide its services. The information collected and maintained includes, upon information and belief, full names, dates of birth, Social Security numbers, phone numbers, addresses, email addresses, account numbers, original creditor information, current creditor information, balances, and payment history. AAA promises clients and those clients' customers that it will safeguard that data from theft and misuse using reasonable security measures.

22.    Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential information, PII, which includes information that is static, does not change, and can be used to commit myriad financial crimes.

23.    Upon information and belief, Defendant acknowledges to clients it has a duty to protect Plaintiff's and Class Members' PII.

24.    According to Defendant's own admissions, the Data Breach involved PII that was

stored on Defendant's internal systems, as discussed below.

25.     Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand Defendant safeguard their PII.

26.     Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

27.     The unencrypted PII of Plaintiff and Class Members will likely end up for sale on the dark web as that is the *modus operandi* of hackers. In addition, unencrypted PII may fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members. In turn, unauthorized individuals can easily access the PII of Plaintiff and Class Members.

28.      Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiff and Class Members, causing the exposure of PII.

29.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[2]

***Defendant Acquires, Collects, and Stores the PII of Plaintiff and Class Members***

30.     Defendant acquired, collected, and stored the PII of Plaintiff and Class Members.

31.     By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was

---

[2]*See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited: Nov. 24, 2022).

responsible for protecting the PII from disclosure.

32.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### Securing PII and Preventing Breaches

33.     Defendant could have prevented this Data Breach by properly securing and encrypting the systems containing the PII of Plaintiff and Class Members.  Alternatively, Defendant could have destroyed the data, especially for individuals with whom it had not had a relationship for a period of time.

34.     Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendant to protect and secure sensitive data they possess.

35.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

36.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[3] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number,

---

[3] 17 C.F.R. § 248.201 (2013).

employer or taxpayer identification number."[4]

37.     The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

***Value of PII***

38.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[5] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[6] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[7]

39.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down

---

[4] *Id.*
[5] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Nov. 24, 2022).
[6] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/  (last accessed Nov. 24, 2022).
[7] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Nov. 24, 2022).

for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[8]

40.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

41.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[9]

42.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.  The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

43.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[10]

---

[8] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Oct. 27, 2021).
[9] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed Oct. 27, 2021).
[10] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card*

44.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police. The fraudulent activity resulting from the Data Breach may not come to light for years.

45.     Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[11]

46.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, especially Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

47.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

48.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to potentially millions of individuals' detailed, personal information and, thus, the significant number of individuals who

---

*Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Nov. 24, 2022).
[11] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Nov. 24, 2022).

would be harmed by the exposure of the unencrypted data.

49.     To date, Defendant has offered Plaintiff and Class Members only 12 months of identity and credit monitoring services through IDX. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here. Moreover, Defendant put the burden squarely on Plaintiff and Class Members to enroll in the inadequate monitoring services.

50.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

51.     As a condition of providing collection services for clients and clients'  customers, Defendant requires that its clients entrust it with their customers' PII.

52.     By obtaining, collecting, using, and deriving a benefit from Plaintiff and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from unauthorized disclosure.

53.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.

54.     Plaintiff and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their PII confidential and securely maintained, to use such PII solely for business purposes, and to prevent the unauthorized disclosures of the PII.

***Defendant Failed to Properly Protect Plaintiff's and Class Members' PII***

55.     To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

11

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a

virtualized environment

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[12]

56.     To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network

---

[12] *Id.* at 3-4.

traffic....[13]

57.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the

Data Breach, Defendant could and should have implemented, as recommended by the Microsoft

Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection

---

[13] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last accessed Nov. 24, 2022).

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[14]

58.     Given that Defendant was storing the PII of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

59.     The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the PII of Plaintiff and Class Members.

60.     As the result of computer systems in need of security upgrades, inadequate procedures for handling email phishing attacks, viruses, malignant computer code, hacking attacks, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII.

61.     Pursuant to a "Notice of Security Incident" sent to impacted individuals and various state Attorneys General, Defendant AAA says, "On September 7, 2022, AAA learned that it experienced a cyber incident." AAA alleges it "promptly took steps to secure our systems and commenced an investigation into the nature and scope of the incident."  Defendant further claims it worked "diligently to investigate this incident and confirm any information that may be affected." In its investigation, AAA "determined that certain documents stored within AAA's environment were copied from the system as part of the cyber incident between September 5, 2022, and September 7, 2022."

62.     AAA stated its investigation was completed on October 24, 2022.

63.     On or about November 16, 2022, Defendant reported to the various state Attorneys

---

[14] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last accessed Nov. 24, 2022).

General, including the state of Maine, that the Data Breach impacted the PII of 56,848 individuals.[15]

64.   Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiff and Class Members, causing the exposure of PII.

65.   AAA had no effective means to quickly detect, prevent, stop, undo, or remediate the effects of the Data Breach, meaning cybercriminals could easily access and steal PII.

66.   Defendant sent Plaintiff and Class Members a Notice of Data Breach Letter on or around November 16, 2022. The Notice of Data Breach Letter informed Plaintiff and Class Members that:

> The confidentiality, privacy, and security of information within our care are among AAA's highest priorities. Upon learning of the event, we promptly took steps to secure our systems and investigate the full scope of the incident. While our investigation of and response to the event are ongoing, we have taken additional steps to further enhance the security of our systems. In an abundance of caution, we are also notifying potentially affected individuals, including you, and providing information on steps you may take to protect your information, should you feel it is appropriate to do so.

67.   Defendant admitted that PII potentially impacted in the Data Breach contained full names and Social Security numbers.

68.   Because Defendant failed to properly protect and safeguard Plaintiff's and Class Members' PII, an unauthorized third party was able to access Defendant's network, and access Plaintiff's and Class Members' PII stored on Defendant's system.

***Defendant Failed to Comply with FTC Guidelines***

69.   Defendant was also prohibited by the Federal Trade Commission Act ("FTC Act")

---

[15] https://apps.web.maine.gov/online/aeviewer/ME/40/b853362c-e2c9-45be-ba1e-d91bf2610e29.shtml (last accessed Nov. 24, 2022).

(15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

70.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[16]

71.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[17] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

72.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security

---

[16] FEDERAL TRADE COMMISSION, *Start With Security: A Guide for Business*, *available at:* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf   (last visited Nov. 24, 2022).

[17] FEDERAL TRADE COMMISSION, *Protecting Personal Information: A Guide for Business*, *available at:* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited Nov. 24, 2022).

measures.[18]

73.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

74.     Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

75.     Defendant was at all times fully aware of its obligation to protect the PII stored within its systems because of its position as a leading debt collector. Defendant was also aware of the significant repercussions that would result from its failure to do so.

***Plaintiff Pederson's Experience***

76.     Plaintiff Pederson entrusted his PII to Defendant.

77.     Prior to the Data Breach, Defendant retained Plaintiff Pederson's name, address, Social Security number, and accounts receivable balance and information regarding payments made on his accounts.

78.     Plaintiff Pederson provided his PII to Defendant and trusted that the information would be safeguarded according to internal policies and state and federal law.

79.     On November 16, 2022, Defendant notified Plaintiff Pederson that Defendant's

---

[18]  FTC, *Start With Security*, *supra*.

network had been accessed and Plaintiff Pederson's PII may have been involved in the Data Breach.

80.     Plaintiff Pederson is very careful about sharing his sensitive PII. Plaintiff Pederson has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

81.     Plaintiff Pederson stores any documents containing his PII in a safe and secure location or destroys the documents. Moreover, Plaintiff Pederson diligently chooses unique usernames and passwords for his various online accounts.

82.     As a result of the Data Breach notice, Plaintiff Pederson spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring his accounts and credit reports. After the Data Breach occurred, Plaintiff Pederson has had fraudulent activity on his financial account and has spent time remedying this issue. This time has been lost forever and cannot be recaptured.

83.     Plaintiff Pederson suffered actual injury in the form of damages to and diminution in the value of Plaintiff Pederson's PII—a form of intangible property that Plaintiff Pederson entrusted to Defendant, which was compromised in and as a result of the Data Breach. Plaintiff Pederson suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

84.     Plaintiff Pederson has also experienced a substantial increase in suspicious phone calls, emails, and text messages, which Plaintiff believes is related to his PII being placed in the hands of illicit actors.

85.     Plaintiff Pederson has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed

in the hands of unauthorized third parties and possibly criminals.

86.     Plaintiff Pederson has a continuing interest in ensuring that Plaintiff Pederson's PII,
which, upon information and belief, remains backed up in Defendant's possession, is protected,
and safeguarded from future breaches.

## CLASS ALLEGATIONS

87.     Plaintiff bring this nationwide class action on behalf of himself and on behalf of
others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of
Civil Procedure.

88.     The Nationwide Class that Plaintiff seek to represent is defined as follows:

> **All United States residents whose PII was actually or potentially accessed or acquired during the Defendant's Data Breach event in September 2022 (the "Nationwide Class" or "Class").**

89.     Excluded from the Class are the following individuals and/or entities: Defendant
and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which
Defendant has a controlling interest; all individuals who make a timely election to be excluded
from this proceeding using the correct protocol for opting out; any and all federal, state or local
governments, including but not limited to their departments, agencies, divisions, bureaus, boards,
sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this
litigation, as well as their immediate family members.

90.     Plaintiff reserves the right to modify or amend the definition of the proposed class
before the Court determines whether certification is appropriate.

91.     <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): Class Members are so numerous that joinder
of all members is impracticable. There are over 50,000 individuals whose PII may have been
improperly accessed in the Data Breach, and each Class Member is apparently identifiable within

Defendant's records.

92.     _Commonality_, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

a.      Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b.      Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c.      Whether Defendant had duties not to use the PII of Plaintiff and Class Members for non-business purposes;

d.      Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

e.      Whether and when Defendant actually learned of the Data Breach;

f.      Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.      Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.      Whether Defendant adequately addressed and fixed the vulnerabilities that permitted the Data Breach to occur;

j.      Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing

to safeguard the PII of Plaintiff and Class Members;

k.      Whether Defendant violated the consumer protection statutes invoked herein;

l.      Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

m.      Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

n.      Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

93.     Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance.

94.     Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole.  Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

95.     Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class.  Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff have suffered are typical of other Class Members. Plaintiff has also retained

counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

96.     <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

97.     The nature of this action and the nature of laws available to Plaintiff and Class Members makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

98.     The litigation of the claims brought herein is manageable. Defendant's uniform

conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

99.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

100.    Unless a Class-wide injunction is issued, Defendant may continue in their failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

101.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

102.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.    Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c.    Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.     Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e.     Whether Defendant breached the implied contract;

f.     Whether Defendant adequately and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.     Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members; and

i.     Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Nationwide Class)**

103.   Plaintiff and the Nationwide Class repeat and re-allege each and every allegation in the Complaint as if fully set forth herein.

104.   Plaintiff and the Class entrusted Defendant with their PII.

105.   Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

106.   Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

107.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

108.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

109.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII they were no longer required to retain pursuant to regulations.

110.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiff and the Class.

111.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class.  That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant. That duty further arose because Defendant chose to collect and maintain the PII for its own pecuniary benefit.

112.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

113.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

114.     Plaintiff and the Class's injuries were the foreseeable and probable victims of any inadequate security practices and procedures.  Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

115.     Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein.  Defendant's misconduct also included their decisions not to comply with industry standards for the safekeeping of the PII of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

116.     Plaintiff and the Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

117.     Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

118.     Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

119.     Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Class.

120.     Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

121.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Class during the time the PII was within Defendant's possession or control.

122.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

123.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiff and the Class in the face of increased risk of theft.

124.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of PII.

125.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove PII that was no longer required to retain pursuant to regulations.

126.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

127.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the PII of Plaintiff and the Class would not have been compromised.

128.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Nationwide Class.  The PII of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in

safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

129.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

130.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

131.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

132.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

133.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

134.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost

opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

135.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

136.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

137.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT II**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Nationwide Class)**

138.    Plaintiff and the Nationwide Class repeat and re-allege each and every allegation in the Complaint as if fully set forth herein.

139.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII.

140.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

141.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

142.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

143.    Defendant acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

144.    If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

145.    Plaintiff and Class Members have no adequate remedy at law.

146.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft

of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

147. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

148. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## COUNT III
### Invasion of Privacy
### (On Behalf of Plaintiff and the Nationwide Class)

149. Plaintiff and the Nationwide Class repeat and re-allege each and every allegation in the Complaint as if fully set forth herein.

150. Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

151. Defendant owed a duty to Plaintiff and Class Member to keep their PII confidential.

152.    The unauthorized disclosure and/or acquisition (*i.e.,* theft) by a third party of Plaintiff's and Class Members' PII is highly unreasonable, unwarranted, serious, and/or offensive to a reasonable person.

153.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' PII constitutes an intentional invasion of Plaintiff's and the Class Members' PII, to which Plaintiff and Class Members had a reasonable expectation of privacy.

154.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

155.    Defendant knowingly did not notify Plaintiff's and Class Members in a timely fashion about the Data Breach.

156.    Because Defendant failed to properly safeguard Plaintiff's and Class Members' PII, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

157.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

158.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII is still maintained by Defendant with their inadequate cybersecurity system and policies.

159.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A

judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff

and the Class.

160.    Plaintiff, on behalf of himself and Class Members, seeks injunctive relief to enjoin

Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class

Members' PII.

161.    Plaintiff, on behalf of himself and Class Members, seeks compensatory damages

for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by

Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus

prejudgment interest, and costs.

**COUNT IV**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

162.    Plaintiff and the Nationwide Class repeat and re-allege each and every allegation

in the Complaint as if fully set forth herein.

163.    Defendant required Plaintiff and the Nationwide Class to provide and entrust their

PII, including, without limitation, first and last names, addresses, accounts receivable balance and

information regarding payments made to accounts, dates of birth, and Social Security numbers.

164.    Defendant solicited and invited Plaintiff and the Nationwide Class to provide their

PII to Defendant, either directly or indirectly through Defendant's customers, the Covered Entities,

as part of Defendant's regular business practices. Plaintiff and the Nationwide Class accepted

Defendant's offers and provided their PII to Defendant.

165.    As a condition of obtaining care and/or services from Defendant, Plaintiff and the

Nationwide Class provided and entrusted their PII to Defendant. In so doing, Plaintiff and the

Nationwide Class entered into implied contracts with Defendant by which Defendant agreed to

safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Nationwide Class if their data had been breached and compromised or stolen.

166.    A meeting of the minds occurred when Plaintiff and the Nationwide Class agreed to, and did, provide their PII to Defendant and/or Defendant's customers, in exchange for, amongst other things, the protection of their PII.

167.    Plaintiff and the Nationwide Class fully performed their obligations under the implied contracts with Defendant.

168.    Defendant breached the implied contracts it made with Plaintiff and the Nationwide Class by failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that personal and financial information was compromised as a result of the Data Breach.

169.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Nationwide Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

170.    As a result of Defendant's breach of implied contract, Plaintiff and the Nationwide Class are entitled to and demand actual, consequential, and nominal damages.

## COUNT V
## DECLARATORY RELIEF
### (On Behalf of Plaintiff and the Nationwide Class)

171.    Plaintiff and the Nationwide Class repeat and re-allege each and every allegation in the Complaint as if fully set forth herein

172.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

173.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff and Class Members' PII, and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from future data breaches that compromise their PII. Plaintiff and the Class remain at imminent risk that further compromises of their PII will occur in the future.

174.    The Court should also issue prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect customer PII.

175.    Defendant still possesses the PII of Plaintiff and the Class.

176.    To Plaintiff's knowledge, Defendant has made no announcement that it has changed its data storage or security practices relating to the PII.

177.    To Plaintiff's knowledge, Defendant has made no announcement or notification that it has remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

178.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach at AAA. The risk of another such breach is real, immediate, and substantial.

179.    The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another data breach occurs at AAA, Plaintiff and Class Members will likely continue to be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

180.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at AAA, thus eliminating the additional injuries that would result to Plaintiff and Class Members, along with other customers whose PII would be further compromised.

181.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendant implement and maintain reasonable security measures, including but not limited to the following:

    a.  Engaging third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    b.  engaging third-party security auditors and internal personnel to run automated security monitoring;

    c.   auditing, testing, and training its security personnel regarding any new or modified procedures;

    d.   purging, deleting, and destroying PII not necessary for its provisions of services in a reasonably secure manner;

    e.   conducting regular database scans and security checks; and

    f.   routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class, and appointing Plaintiff and his Counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.   requiring Defendant to protect, including through encryption, all data

collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii.    requiring Defendant to delete, destroy, and purge the PII of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v.    prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.    requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is

compromised, hackers cannot gain access to other portions of Defendant's systems;

x.     requiring Defendant to conduct regular database scanning and securing checks;

xi.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiff and Class Members;

xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting PII;

xiv.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

     xv.       requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

     xvi.      requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.     For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.     For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.     For prejudgment interest on all amounts awarded; and

G.     Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Dated this 1st day of December 2022.

JOHNSON, JANKLOW, ABDALLAH &
REITER, LLP

BY  /s/   Pamela R. Reiter
Pamela R. Reiter
Anthony P. Sutton
PO Box 2348
Sioux Falls, SD  57104
(605)338-4304
pamela@janklowabdallah.com
anthony@janklowabdallah.com

AND

Terence R, Coates*
Jonathan T. Deters*
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513.651.3700
Facsimile: 513.665.0219
*tcoates@msdlegal.com*
*jdeters@msdlegal.com*

Joseph M. Lyon*
THE LYON FIRM, LLC
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax:(513) 766-9011
jlyon@thelyonfirm.com

*Pro Hac Vice Application forthcoming*

*Attorneys for Plaintiff and Putative Class*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Craig Pederson

## DEFENDANTS

AAA Collections, Inc.,

**(b)** County of Residence of First Listed Plaintiff   Lake County, South Dakota
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Minnehaha County SD
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pamela R. Reiter/Anthony Sutton, JJAR, L.L.P., P.O. Box 2348, Sioux Falls, SD 57101-2348, 605-275-8555

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability / ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine / Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☒ 360 Other Personal / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Injury / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)

Brief description of cause:
Negligence, unjust enrichment, invasion of privacy, breach of implied contract

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   12/01/2022

SIGNATURE OF ATTORNEY OF RECORD   *Pamela Reiter*

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 06/17)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
   United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
   Original Proceedings.  (1) Cases which originate in the United States district courts.
   Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
   Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
   Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
   Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
   Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
   **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.