UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CRAIG PEDERSON and DAVID BROWN, on behalf of themselves and all others similarly situated, | Case No. 4:22-cv-04166-RAL |
| Plaintiffs, | Chief Judge Roberto A. Lange |
| v. | |
| AAA COLLECTIONS, INC., | |
| Defendant. | |

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

Plaintiffs Craig Pederson and David Brown ("Plaintiffs"), on behalf of themselves and all others similarly situated, hereby respectfully request that the Court grant preliminary approval of the Parties' proposed class action settlement in this matter under Rule 23. After several weeks of arm's-length negotiations and an August 9, 2023, mediation session with Jill R. Sperber, Esq. from Sperber Dispute Resolution—where the key terms were finalized—Plaintiffs and AAA Collections, Inc. ("Defendant" or "AAA") reached the Settlement Agreement (the "Settlement" or "S.A.") attached hereto as **Exhibit 1**.

The Settlement provides timely and excellent benefits to the settlement Class.[1] Under the Settlement, AAA will establish a non-reversionary Settlement Fund of $865,000 from which Class

---

[1] Capitalized terms herein have the same meaning as in the Settlement Agreement.

Members are eligible to recover compensation up to $5,000.00 per person for out-of-pocket losses, up to $25.00 per hour ($125.00 cap) for up to five hours of lost time, and a $50.00 pro rata cash payment. The Settlement Fund will also pay for attorneys' fees and costs, Class Representative service awards, and all costs of notice and claims administration. Additionally, AAA has undertaken or will undertake certain reasonable steps to further secure its systems and environments. As detailed herein, the Settlement surely satisfies the preliminary approval standard as it is likely to be approved as fair, reasonable, and adequate.

Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing Analytics Consulting, LLC as Settlement Administrator; (4) preliminarily certifying the Class for settlement purposes only; (5) appointing Craig Pederson and David Brown as Class Representatives; (6) appointing Terence R. Coates and Dylan J. Gould of Markovits, Stock & DeMarco, LLC; Joseph Lyon of the Lyon Firm, LLC; Raina Borrelli of Turke & Strauss, LLP; and Pamela Reiter of Reiter Law Firm LLC as Class Counsel; (7) approving the form and content of the Claim Form (Exhibit A), Long Form Notice (Exhibit B), and Short Form Notice (Exhibit D), all attached as exhibits to the Settlement Agreement, respectively; and (8) scheduling a Final Approval Hearing to consider entry of a final order approving the Settlement, final certification of the Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service award.

The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims that will provide the Class Members with substantial monetary relief without the risk of delay of further litigation. The terms

of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this Circuit and elsewhere.

## II.    STATEMENT OF FACTS

### A.  Background

Defendant AAA is a third-party collection and debt resolution services company. Am. Compl. ¶ 1. From around September 5, 2022, until September 7, 2022, AAA experienced a cyberattack (the "Data Incident"). *Id*. ¶ 3. After an investigation, AAA determined that the following types of personally identifiable information ("PII") and protected health information ("PHI") may have been impacted: full names, Social Security numbers, and potentially other information (collectively "Private Information"). *Id*. ¶ 2. AAA began notifying Plaintiffs and the Class about the Data Incident on November 16, 2022. *Id*. ¶ 4.

### B.  Procedural History

On December 1, 2022, Plaintiff Craig Pederson filed a class action lawsuit against AAA in the District Court for the District of South Dakota alleging claims of negligence, unjust enrichment, invasion of privacy, breach of implied contract, and declaratory relief. Doc. 1. On February 3, 2023, AAA moved to dismiss Plaintiff's Complaint. Doc. 10. On February 24, 2023, Plaintiffs Craig Pederson and David Brown filed an Amended Complaint alleging claims of negligence, breach of implied contract, breach of third-party beneficiary contract, unjust enrichment, invasion of privacy, and declaratory relief. Doc. 19. On March 28, 2023, AAA moved to dismiss Plaintiffs' Amended Complaint. Doc. 26. That motion is fully briefed and was scheduled for oral argument. Docs. 32, 33, 34.

Recognizing the benefits of early resolution, the Parties agreed to mediate on August 9, 2023, with Jill R. Sperber, Esq. from Sperber Dispute Resolution, and agreed to stay the hearing

on Defendant's motion to dismiss pending the outcome of that mediation. Joint Declaration of Plaintiffs' Proposed Class Counsel Supporting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl."), ¶¶ 8–10 (attached as **Exhibit 2**). Before the mediation, Plaintiffs requested, and AAA produced, key information about the size and composition of the Settlement Class, how the Data Breach occurred, AAA's response to the Data Breach, and security changes AAA undertook as a result of the Data Breach. *Id*. ¶ 14. The Parties both prepared detailed mediation statements outlining their positions on the legal and factual claims at issue and their positions on the framework for resolution. *Id*. At mediation, and with the assistance of Jill R. Sperber, the Parties were able to reach a settlement in principle on the material terms of the Settlement. *Id*. ¶ 17-18. In the weeks that followed, the Parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Settlement Administrator. *Id*. ¶¶ 19-20. The Settlement Agreement was finalized and executed on October 5, 2023. See **Exhibit 1**. Class Counsel successfully negotiated the Settlement of this matter to the benefit of Plaintiffs and Class Members.

## III.    SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement provides for the certification of a settlement Class defined as: the individuals identified on the Class List whose certain personal information was involved in the Data Incident who does not timely elect to be excluded from the Class. S.A. ¶ 12. All members of the Class that do not opt-out of the settlement shall be referred to as Class Members. Excluded from the Class are: (1) the judge presiding over this Action, and members of his direct family; (2) AAA, its subsidiaries, parent companies, successors, predecessors, and any entity in which the

Defendant or its parents have a controlling interest and their current or former officers and directors; and (3) Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*.

### B. Settlement Benefits

The Settlement provides Class Members with timely benefits targeted at remediating the specific harms they have suffered because of the Data Incident. The Settlement establishes a non-reversionary common fund of eight hundred sixty-five thousand dollars ($865,000.00) which will be paid by, or on behalf of, the Defendant. S.A. ¶ 46. The establishment of the Settlement Fund ensures that Class Members who have already spent money as a result of the Data Incident, including in response to identity theft, can have their losses reimbursed. The Settlement provides the following benefits to all Class Members who submit a valid claim—and do not timely and validly opt-out of participation:

### 1. Monetary Relief

First, Class Members can make a claim for up to $5,000.00 per person to compensate them for their out-of-pocket losses, which may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id*. ¶ 56.

Second, Class Members can make a claim for up to $125.00 for lost time (up to 5 hours at $25.00 per hour) for time spent mitigating the effects of the Data Incident. *Id*.

Finally, Class Members can make a claim for a pro rata cash payment of $50.00. *Id*. This amount may pro rata increase or decrease depending on prior disbursements for Out-of-Pocket Losses and Lost Time. *Id*.

### 2. Remedial Measures

In addition to providing monetary relief, AAA has pledged to undertake certain reasonable steps to further secure its systems and environments and will prepare a confidential declaration detailing same. AAA agrees to pay for these changes *separate and apart* from other settlement benefits, and not from the Settlement Fund.

### C. Settlement Administration

The Parties agreed that Analytics Consulting, LLC will serve as the Settlement Administrator to process all claims, subject to approval by the Court. *Id*. ¶ 45. Notice and Administration Expenses will be paid through and using the Settlement Fund. *Id*. ¶ 31. The Settlement Administrator will establish and administer a Settlement Website which will be publicly viewable and contain broad information about the Settlement, including but not limited to, copies of the Complaint filed in this matter, a copy of the Long Form Notice, Short Form Notice, FAQs, Claim Form that may be submitted online through the Settlement Website or mailed to the Settlement Administrator, and the deadlines for filing a Claim, Objection, Exclusion requests, and the date of the Final Approval Hearing. *Id*. ¶ 48; *see also* Declaration of Richard W. Simmins of Analytics Consulting LLC in Support of Proposed Notice Program ("Analytics Decl."), ¶¶ 27-28 (attached as **Exhibit 3**).

The Settlement Administrator will provide compensation (as detailed *supra*) to Class Members who submit valid and timely claim forms from the Settlement Fund. *Id*. ¶ 56. Such compensation will be provided via mailed check and/or electronic payment. *Id*. ¶ 47. Claims will

be subject to review for completeness and plausibility by a Settlement Administrator, and Claimants will have the opportunity to seek review by the Parties' counsel, if they dispute the Settlement Administrator's initial determination. *Id*. ¶ 56. For the benefit of the Class, Class Members will be able to submit claims either (1) by mail, or (2) electronically. *Id*. ¶ 11. For any invalid claims submitted, those Class Members will be sent a deficiency notice and be given twenty-one (21) days to cure any deficiencies. *Id*. ¶ 69.

### D. Notice to Class Members

Within fourteen (14) days after the date of the Preliminary Approval Order, Defendant shall provide the Class List to the Settlement Administrator. *Id*. ¶ 65. Notice will be provided via both: (1) direct notice, and (2) notice on the Settlement Website. *Id*.; Analytics Decl., ¶¶ 17-22. Within sixteen (16) days after receipt of Class List, the Settlement Administrator shall begin to disseminate direct Notice—via U.S. mail—to the Class Members. *Id*. In addition, Class Counsel may direct the Settlement Administrator to send reminder notices to Class Members at any time prior to the Claims Deadline. *Id*.

### E. Opt-Outs

Class Members may opt-out from receiving the benefits of the settlement. *Id*. ¶ 67. The Notice will inform each Class Member of their right to request exclusion from the Class—thereby preserving any claims they may have. *Id*. A Class Member can opt-out by timely submitting a complete Request for Exclusion to the Settlement Administrator postmarked no later than the Opt-Out Deadline. *Id*. A Request is complete and valid when it includes: (1) the name of the proceeding, (2) the individual's full name, (3) current address, (4) personal signature, and (5) the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate

in the Settlement. *Id*. The Parties recommend to the Court that the opt-out period be the sixty (60) Day period beginning on the Notice Deadline. *Id*. ¶ 33.

### F. Objections

Class Members may object to the Settlement or Fee Application by submitting written objections to the Court no later than the Objection Deadline—which the Parties recommend as a date approximately sixty (60) days after Notice Deadline. *Id*. ¶¶ 32, 68. For an objection to be a valid objection under the Settlement, it must be in writing, postmarked by the Objection Deadline, filed with/or mailed to the Court and the Settlement Administrator and must include (1) the name of the proceedings; (2) the Class Member's full name, current mailing address, and telephone number; (3) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (4) the identity of any attorneys representing the objector; (5) a statement regarding whether the Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (6) a statement identifying all class action settlements objected to by the Class Member in the previous five (5) years; and (7) the signature of the Class Member or the Class Member's attorney. *Id*. ¶ 68. Any Class Member who does not file a timely and adequate objection waives the right to object or to be heard at the Final Approval Hearing and is barred from making any objection to the Settlement. *Id*. ¶ 66.

### G. Attorneys' Fees and Service Awards

Class Counsel will file a Fee and Expense Application for an award of attorneys' fees to be paid from the Settlement Fund not to exceed one-third (33.33%) of the Settlement Fund for fees, or $288,333.33, and litigation expenses not to exceed $20,000. S.A. ¶ 83. And Class Counsel will request a Service Award of $5,000 to each of the Plaintiffs ($10,000 total), subject to Court

approval. *Id*. ¶ 44. These Service Awards are intended to recognize Plaintiffs' efforts in the litigation and commitment to the Class.

### H. Release of Claims

The Parties tailored the release to affect only those claims related to the Data Incident—defined as "Released Claims" in the Settlement Agreement. S.A. ¶ 78. Thus, any Class Members, who do not exclude themselves, will release their claims against AAA related to the Data Incident. *Id*.

## IV.    LEGAL STANDARD

Under Rule 23(e), the settlement of a class action requires court approval, which is appropriate "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court's review of a proposed class action settlement generally involves two steps: preliminary approval and then final approval. Federal Judicial Center, *Manual for Complex Litigation* § 21.632 (4th ed. 2004). At the preliminary approval step, the court does a "preliminary fairness evaluation" of the "fairness, reasonableness, and adequacy of the settlement terms" and whether it is likely that "the proposed class satisfies the criteria [of] Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id*.

The Supreme Court is clear that while "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim' . . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). Thus, "[i]n making this review . . . a court must not substitute 'its own judgment as to optimal settlement terms for the judgments of the litigants and their counsel.'" *Galloway v. Kan. City Landsmen, LLC*, No. 4:11-

1020-CV-W-DGK, 2013 WL 3336636, at *1 (quoting *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1148–49 (8th Cir. 1999)).

Thus, courts merely review whether the "proposed settlement is within the range of reasonableness." *Id*; *Cortez v. Neb. Beef, Ltd*., No. 8:08CV90, 2012 12931431, at *2 (D. Neb. Feb. 9, 2012). And "the standard that governs the preliminary approval inquiry is *less demanding* than the standard that applies at the final approval phase." William B. Rubenstein, *Newberg on Class Actions* § 13:13 (5th ed. 2011) (emphasis added). Moreover, "[t]he primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length, noncollusive negotiations." *Id*. § 13:13. Then, once the court is satisfied, the court should direct "notice of a formal Rule 23(e) fairness hearing . . . to the class members." *Manual for Complex Litigation*, *supra*, § 21.633.

Public policy strongly favors the voluntary conciliation and settlement of class actions— where the inherent costs, delays, and risks of protracted complex litigation can drain judicial resources and overwhelm any potential benefit to plaintiffs and/or Class Members. In particular, the Eighth Circuit has directed that "strong public policy favors agreements, and courts should approach them with a *presumption* in their favor." *Petrovic*, 200 F.3d at 1148 (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)). Thus, District Courts in this Circuit are particularly attuned to the benefits of voluntary settlement. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993) ("The policy in federal court of favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."); *In re Pork Antitrust Litig*., No. 18-1776 (JRT/JFD), 2022 4238416, at *6 (D. Minn. Sep. 14, 2022) (noting the "the policy of favoring settlements"); *Galloway*, 2013 WL 3336636, at *1 (stating that "the Court is mindful that public policy favors settlements").

## V.    ARGUMENT

### A.  Preliminary Certification of the Class is Warranted.

Before granting preliminary approval, the Court should first determine if certification is appropriate for the proposed Settlement Class. *See Manual for Complex Litigation.*, § 21.632 (4th ed. 2013). Certification is appropriate if the proposed class, representatives, and counsel satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). And under 23(b)(3), the class action must satisfy the two requirements of predominance and superiority. *Id*. 615–16. Additionally, there are two "implicit" requirements for certification: "the class description must be sufficiently definite," and "the class representative must be a member of the class." *Heldt v. Payday Fin.*, No. 3:13-CV-03023-RAL, 2016 WL 96156, at *7 (D.S.D. Jan. 8, 2016) (citing *Brown v. Wells Fargo & Co.*, 284 F.R.D. 432, 444–45 (D. Minn. 2012)). Still, when considering a request for settlement-only class certification, the court need not consider trial manageability. *Amchem*, 521 U.S. at 620.

Class actions are regularly certified for settlement. In particular, similar data breach cases are routinely certified—even on a *national* basis—such as the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020). *See also*, *e.g.*, *In re Target Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case meets all the standards for certification under Rule 23 and should be similarly certified.

**B. The Settlement Satisfies the Requirements of Rule 23(a).**

**1. The Class is Sufficiently Numerous.**

Numerosity requires that the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Generally, a putative class of over forty members is sufficient to satisfy numerosity. *Boswell v. Panera Bread Co*., 311 F.R.D. 515, 527 (E.D. Mo. 2015); *see also Anderson v. Weinert Enters*., 986 F.3d 773, 777 (7th Cir. 2021); *In re Modafinil Antitrust Litig*., 837 F.3d 238, 250 (3d Cir. 2016). Here, the putative class includes approximately 66,732 individuals. Thus, numerosity is clearly met.

**2. Questions of Law and Fact Are Common to the Class.**

Commonality requires that there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requires that Class Members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc*, 564 U.S. at 350. In other words, the determination of common questions must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here commonality is readily satisfied, as Plaintiffs and Class Members all have common questions of law and fact arising out of the same common event: the Data Incident discovered by AAA on or about September 7, 2022. Specifically, Plaintiffs alleged the following fourteen questions of law and fact that are common to the class:

1. Whether and to what extent AAA had a duty to protect the Private Information of Plaintiffs and Class Members;

2. Whether AAA had duties not to disclose the Private Information of Plaintiffs and Class Members to unauthorized third Parties;

3. Whether AAA had duties not to use the Private Information of Plaintiffs and Class Members for non-business purposes;

4. Whether AAA failed to adequately safeguard the Private Information of Plaintiffs and Class Members;

5. Whether and when AAA actually learned of the Data Incident;

6. Whether AAA adequately, promptly, and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

7. Whether AAA violated the law by failing to promptly notify Plaintiffs and Class Members that their Private Information had been compromised;

8. Whether AAA failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Incident;

9. Whether AAA adequately addressed and fixed the vulnerabilities which permitted the Data Incident to occur;

10. Whether AAA engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiffs and Class Members;

11. Whether AAA violated the consumer protection statutes invoked herein;

12. Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of AAA's wrongful conduct;

13. Whether Plaintiffs and Class Members are entitled to restitution as a result of AAA's wrongful conduct; and

14. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Incident. Am. Compl. ¶ 107.

Like in other data breach cases, these common issues all center on AAA's conduct, or other facts and law applicable to all Class Members, thus satisfying the commonality requirement. *See*, *e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig*., No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig*., 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching class wide resolution."). Thus, commonality is satisfied.

### 3. Plaintiffs' Claims and Defenses Are Typical.

Typicality requires that the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Generally, this requirement is "considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Heldt*, 2016 WL 96156, at *8 (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561–62 (8th Cir. 1982)). And this requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1174 (8th Cir. 1995). Moreover, "the presence of factual variations is normally not sufficient to preclude class action treatment." *Donaldson v. Pillsbury Co*., 554 F.2d 825, 831 (8th Cir. 1977). Thus, "[c]ourts have conclusively held that variations in the amount of relief sought will not render the proposed class

representative's claims atypical." Rubenstein, *supra*, § 3:42; *see also* 7A Charles A. Wright &

Arthur R. Miller, *Federal Practice & Procedure* § 1764 (3d ed. 2011).

Here, Plaintiffs satisfy typicality. First, the claims and defenses of Plaintiffs and Class

Members all stem from a single event: AAA's Data Incident. Am. Compl. ¶ 108. And Plaintiffs

and Class Members all share similar claims—which also derive from the same theories (e.g.,

negligence). *See id*. ¶¶ 118–202. Moreover, typicality is generally found in data breach class

actions like this one. *See*, *e.g.*, *In re Target*, 309 F.R.D. at 490; *Beasley v. TTEC Servs. Corp.*, No.

22-cv-00097-PAB-STV, 2023 WL 3323311, at *5 (D. Colo. May 9, 2023); *Thomsen v. Morley

Co., Inc.*, 639 F. Supp. 3d 758, 765 (E.D. Mich. 2022).

### 4.   Plaintiffs Will Provide Fair and Adequate Representation.

Adequacy requires that the class representative must fairly and adequately protect the

class's interests. Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest

between named Parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Thus,

adequacy is met when "(1) the class representatives have common interests with the members of

the class, and (2) the class representatives [] vigorously prosecute the interests of the class through

qualified counsel." *Paxton*, 688 F.2d at 562. Here, adequacy is met because, as discussed above,

class representatives share common interests with the class stemming from the exact same Data

Incident. *See, e.g.,* Am. Compl. ¶¶ 107–08, 118–202. Thus, the Class Representatives do not have

any interests antagonistic to other Class Members. And finally, the Class Representatives have

retained qualified counsel with broad experience in complex class actions and, in particular, data

breach class actions. Joint Decl. ¶¶ 29-40. Thus, adequacy is satisfied.

### C.  The Settlement Satisfies the Requirements of Rule 23(b)(3).

#### 1.  Common Questions of Law and Fact Predominate.

Predominance requires that questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The Supreme Court is clear that predominance "does *not* require" a plaintiff seeking class certification to "show that the elements of [their] claim are susceptible to classwide proof." *Amgen Inc*., 568 U.S. at 468–69 (emphasis added). Rather, predominance merely requires "that common questions '*predominate* over any questions affecting only individual [class] members.'" *Id*. (quoting Fed. R. Civ. P. 23(b)(3)). In other words, "the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Avritt v. Reliastar Life Ins. Co*., 615 F.3d 1023, 1029 (8th Cir. 2010).

Courts recognize that predominance is readily satisfied in data breach class actions, which—by their very nature—predominately implicate many common questions. *See, e.g.*, *Thomsen*, 639 F. Supp. 3d at 766 (finding predominance satisfied because class members all suffered similarly from the exact same data breach); *In re Sonic Corp. Customer Data Breach Litig*., No. 1:17-md-02807-JSG, 2020 WL 6701922, at *6 (N.D. Ohio Nov. 13, 2020) (same); *Kostka v. Dickey's Barbecue Rests., Inc*., No. 3:20-cv-03424-K, 2022 WL 16821685, at *8-9 (N.D. Tex. Oct. 14, 2022) (same); *Hapka v. Carecentrix, Inc*., No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (same).

Predominance is satisfied here. For one, Plaintiffs alleged at least fourteen questions (detailed *supra*) that are common to all Class Members. And all these questions of law and fact arise out of the exact same common event: the Data Incident discovered by AAA on or about

September 7, 2022. Thus, these common questions are susceptible to common evidence. As such, any individualized questions are minor compared to the voluminous number of common questions.

Plaintiffs acknowledge that, in nationwide class actions, predominance may be defeated if the laws of many different jurisdictions apply and there is "significant variation" between those laws. *Manual for Complex Litigation*, *supra*, § 21.132. Still, this "general rule . . . is relaxed when the class is being certified for settlement." *Heldt*, 2016 WL 96156, at *12. And because in the settlement context, "manageability concerns are not implicated" and thus "courts [are] more receptive to certification." Wright & Miller, *supra*, § 1780.1. For example, in *Heldt*, this court was concerned about the "variations in state usury law." 2016 WL 96156, at *12. But in contrast, these concerns are not present here. After all, Plaintiffs' complaint does not implicate the varying laws of many different jurisdictions. Rather, Plaintiffs' claims are primarily grounded in common law— and thus, do not pose such administrative issues. *See* Am. Compl. ¶¶ 118–202. Thus, predominance is satisfied.

### 2.  Class Action Treatment Is Superior to Other Methods.

Superiority requires that the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The purpose of this requirement is to "assure that the class action is the most efficient and effective means of resolving the controversy." Wright & Miller, *supra*, § 1779. Moreover, courts recognize that superiority is readily satisfied in data breach class actions: "[b]ecause the data-breach issues predominate, it would be impractical for the members of the Class to individually sue the same defendant for theft of their personal information." *Thomsen*, 639 F. Supp. 3d at 766; *see also In re Target*, 309 F.R.D. at 490 (holding that "the class action device is the superior method for resolving this dispute"); *Beasley*, 2023 WL 3323311, at *7 (same); *Bowdle v. King's Seafood Co., LLC*, No. SACV 21-

01784-CJC (JDEx), 2022 WL 192352643, at *5 (C.D. Cal. Oct. 19, 2022) (same); *Attias v. Carefirst, Inc.*, 344 F.R.D. 38, 57 (D.D.C. 2023) (same).

Superiority is satisfied here. After all, individual litigation for all Class Members—who have the same claims arising from the same Data Incident—would be highly inefficient and unnecessarily burden judicial resources. Moreover, the proposed Settlement will give the Parties the benefit of finality, as opposed to protracted and individualized litigation. Thus, superiority is satisfied.

### D.  The Proposed Class Meets the Two "Implicit" Requirements.

This Court has noted that class actions also have two "implicit" requirements: "the class description must be sufficiently definite," and "the class representative must be a member of the class." *Heldt*, 2016 WL 96156 at *7 (citing *Brown v. Wells Fargo & Co.*, 284 F.R.D. 432, 444–45 (D. Minn. 2012)). Here, the two "implicit" requirements are satisfied. First, the class definition is sufficiently definite because it is comprised of an identifiable list of individuals that AAA determined were impacted by the Data Breach. S.A. ¶¶ 12, 14. And second, Plaintiffs are both members of the class—evidenced by the fact that they received breach notices from AAA. *Id*. ¶¶ 78, 91. Thus, both "implicit" requirements are met.

### E.  The Settlement is Fair, Reasonable, and Adequate.

Under Rule 23(e), a district court may approve a settlement that is "fair, reasonable, and adequate." *Huyer v. Njema*, 847 F.3d 934, 938 (8th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)). And "[a]t the preliminary approval stage, the 'fair, reasonable, and adequate' standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Heldt*, 2016 WL 96156, at *6 (quoting *Shoenbaum v. E.I. DuPont de Nemours & Co.*, No. 4:05CV01108 ERW, 2009 WL

4782082, at *2, *4 n.4 (E.D. Mo. Dec. 8, 2009)). Here, courts are primarily concerned with the "character of the settlement negotiations and the absence of collusion." *Id*. But concerns are alleviated when the settlement was (1) "preceded by a significant period of litigation" *or* (2) "negotiations were conducted by a third-party mediator." *Id*.

The Settlement is fair, reasonable, and adequate. First, the Settlement was preceded by a significant period of litigation: extensive pre-suit discovery by Class Counsel, an initial complaint, an initial motion to dismiss, an amended complaint, and a second motion to dismiss, which the Parties were prepared to argue to the Court. Docs. 1, 10, 19, 26, 27, 32, 33, 34, 37; Joint Decl. ¶ 8. Second, the Parties negotiated the Settlement at arms-length through an experienced third-party mediator, Jill R. Sperber, Esq. from Sperber Dispute Resolution. Joint Decl. ¶ 12. And the Settlement is well within the range of possible approval, offering significant benefits to the Settlement Class that directly address the harms they claim they suffered due to the Data Breach, including out of pocket expenses, lost time, and the future risk of identity theft. *Id*. ¶¶ 23, 25. Moreover, throughout all negotiations, Class Counsel and AAA's Counsel fought hard for the interests of their respective clients. *Id*. ¶ 17. And Class Counsel has extensive experience litigating consumer cases, including class actions involving data breaches. *Id*. ¶¶ 29-40. All together, these factors favor preliminary approval because they establish that the Settlement was non-collusive.

Additionally, in the Eighth Circuit, courts consider the four *Van Horn* factors: (1) "the merits of the plaintiff's case, weighed against the terms of the settlement," (2) "the defendant's financial condition," (3) "the complexity and expense of further litigation," and (4) "the amount of opposition to the settlement." *Huyer*, 847 F.3d at 939 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). The first factor is the "most important factor." *Id*.

First, the merits of Plaintiffs' case—balanced against the terms of the settlement—weigh toward preliminary approval. Class Counsel strongly believe in the merits of the claims brought in this case. *See* Joint Decl. ¶ 21. But without the Settlement, the outcome of this litigation would be far from certain. For example, although plaintiffs around the country have often survived motions to dismiss in data breach cases, winning class certification and an eventual jury verdict is far from certain. *See*, *e.g.*, *In re TD Ameritrade Acct. Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action). Plaintiff also recognizes the difficulties in establishing liability through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. If approved, the Settlement will bring finality to what would otherwise be contentious and costly litigation. In lieu of these uncertainties, the Settlement provides substantial, direct, and certain benefits to the class, including non-monetary measures to ensure that Class Members' rights are not violated by Defendant. Thus, this factor weighs strongly in favor of the Settlement.

Second, AAA's financial condition weighs toward preliminary approval. Here, there is no indication that AAA's financial condition is unsecure. And AAA has not indicated that it would be unable or unwilling to voluntarily fulfill their obligations under the proposed settlement.

Third, the complexity and expense of further litigation weighs toward preliminary approval. As detailed above, the Parties have already expended substantial funds litigating this case. Counsel for all Parties have vigorously represented their clients and will continue to do so. But if this case continues, it will place a substantial burden upon both the Parties and the Court. In fact, this case will only become more expensive and complex as the Parties engage in formal discovery, commission expert reports, further pursue third-party vendor information, and move

towards class certification and dispositive motions. Thus, this factor also supports approval of the settlement.

Fourth, the amount of opposition to the settlement weighs to preliminary approval. After all, AAA does not oppose Plaintiffs' motion for preliminary approval. Thus, at present, there is zero opposition to the settlement.

Thus, the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Eighth Circuit's *Van Horn* factors. As such, this Court should grant preliminary approval and direct notice to issue to the class.

### F.  The Court Should Approve the Proposed Notice Program.

The Court should approve the notice plan because it directs "notice in a reasonable manner" as required by Rule 23. Fed. R. Civ. P. 23(e)(1)(B). Here, class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Notice may occur by "United States mail, electronic means, or other appropriate means." *Id*. And notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member may appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. *Id*. As such, due process requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Eighth Circuit is clear that "[v]alid notice of a settlement agreement 'may consist of a very general description' of settlement terms." *Ortega v. Uponor, Inc. (In re Uponor, Inc.)*, 716 F.3d 1057, 1065 (8th Cir. 2013) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)). And "[n]otice sent by first class mail or email to each member of the class is sufficient when the names and the mailing addresses or email addresses of the class members are known." *Walkinshaw v. CommonSpirit Health*, No. 4:19CV3012, 2022 WL 5255287, at *5 (D. Neb. Oct. 6, 2022).

The proposed notice plan satisfies due process. Analytics Decl., ¶¶ 32, 34-38. Here, the Parties have agreed that "[n]otice shall be disseminated via U.S. mail to all Class Members *and also* via e-mail to Class Members whose personal e-mail addresses are known." S.A. ¶ 65 (emphasis added). Moreover, the Parties have agreed that "Class Counsel may direct the Settlement Administrator to send reminder notices to Class Members at any time prior to the Claims Deadline." *Id*. And both the Short Form Notice (Postcard) and Long Form Notice provide all the information required by Fed. R. Civ. P. 23(c)(2)(B). Ex. B, D. Thus, the proposed notice plan satisfies—and even exceeds—that which is required by due process.

### G. The Court Should Appoint Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv). As evidenced by the Joint Declaration of Counsel, the proposed Class Counsel meets these requirements. Thus, the Court should appoint Terence R. Coates and Dylan

J. Gould of Markovits, Stock & DeMarco, LLC; Joseph Lyon of the Lyon Firm, LLC; Raina Borrelli of Turke & Strauss, LLP; and Pamela Reiter of Reiter Law Firm LLC as Class Counsel under Rule 23(g).

## VI.    CONCLUSION

Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing Analytics Consulting, LLC as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Craig Pederson and David Brown as Representatives of the Class; (6) appointing Terence R. Coates and Dylan J. Gould of Markovits, Stock & DeMarco, LLC; Joseph Lyon of the Lyon Firm, LLC; Raina Borrelli of Turke & Strauss, LLP; and Pamela Reiter of Reiter Law Firm LLC as Settlement Class Counsel; (7) approving the form and content of the Claim Form (Exhibit A), Long Form Notice (Exhibit B), and Short Form Notice (Exhibit D), all attached to the Settlement, respectively; and (8) scheduling a Final Approval Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' Service Awards. A proposed Order Granting Preliminary Approval of Class Action Settlement is attached as **Exhibit 4**.

Date: October 6, 2023                            Respectfully Submitted,

                                                 **REITER LAW FIRM, LLC**

                                                 **BY** */s/ Pamela R. Reiter*
                                                 Pamela R. Reiter
                                                 Anthony P. Sutton
                                                 5032 S. Bur Oak Place, Suite 205
                                                 Sioux Falls, SD 57108
                                                 Phone: 605-705-2900
                                                 pamela@reiterlawfirmsd.com
                                                 anthony@reiterlawfirmsd.com

Terence R, Coates*
Jonathan T. Deters*
Dylan J. Gould*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513.651.3700
Facsimile: 513.665.0219
tcoates@msdlegal.com
jdeters@msdlegal.com
dgould@msdlegal.com

Joseph M. Lyon*
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax:(513) 766-9011
jlyon@thelyonfirm.com

Raina C. Borrelli*
**TURKE & STRAUSS, LLP**
613 Williamson St., Suite 201
Madison, WI 53703
Telephone (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com

*Pro Hac Vice*

*Attorneys for Plaintiffs and Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on October 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                         */s/ Pamela R. Reiter*
                         Pamela R. Reiter