UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CRAIG PEDERSON and DAVID BROWN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AAA COLLECTIONS, INC.,<br><br>Defendant. | Case No. 4:22-cv-04166-RAL<br><br>Chief Judge Roberto A. Lange |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

**I.   INTRODUCTION**

Defendant AAA Collections, Inc. ("Defendant" or "AAA") experienced a data breach in 2022 that allegedly compromised the sensitive personal information of Plaintiffs and approximately 60,316[1] other individuals. On October 16, 2023, this Court granted preliminary approval of the proposed $865,000 non-reversionary common fund settlement to resolve the claims of Plaintiffs and Class Members. In doing so, the Court found that the Settlement Agreement was fair, reasonable, and adequate, and that the proposed notice plan met the requirements of Fed. R. Civ. P. 23 and due process. Nothing has changed to alter the Court's initial assessment.

---

[1] Initially, Plaintiffs believed there were over 66,000 Class Members. However, after deduplicating the class list, the Settlement Administrator determined there are approximately 60,316 Class Members.

1

Following preliminary approval, the Settlement Administrator (Analytics Consulting, LLC) executed the notice program and settlement administration in accordance with its previous representations and the Court's Preliminary Approval Order. The Settlement Administrator estimates that it successfully delivered direct notice to roughly 87.9% of Class Members, which is well within the 70-95% range that is suggested by the Federal Judicial Center to satisfy due process. The Class response to the notice program was very favorable, resulting in 2,421 valid claims for cash benefits and, importantly, zero opt outs or objections.

Because the requirements of Rule 23 and due process are satisfied, the Court should certify the Class for settlement purposes and grant final approval. The declaration of Dylan J. Gould in Support of Final Approval ("Gould Decl.") is included as **Exhibit 1**, the Declaration of the Settlement Administrator Regarding Notice ("Settlement Admin Decl.") is included as **Exhibit 2**, and a proposed order is included as **Exhibit 3**.

## II. STATEMENT OF FACTS [2]

### A. History of the Litigation and Settlement Negotiations

Defendant AAA is a third-party collection and debt resolution services company. Amended Complaint ("Compl."), ECF 19 ¶ 1. From around September 5, 2022, until September 7, 2022, AAA experienced a cyberattack (the "Data Incident"). *Id*. ¶ 3. After an investigation, AAA determined that the following types of personally identifiable information ("PII") and protected health information ("PHI") may have been impacted: full names, Social Security numbers, and potentially other information (collectively "Private Information"). *Id*. ¶ 2. AAA began notifying Plaintiffs and the Class about the Data Incident on November 16, 2022. *Id*. ¶ 4.

---

[2] Plaintiffs respectfully incorporate the statement of facts included in Plaintiffs' motion for preliminary approval, ECF 42, which provides a more detailed history of the facts and events preceding that motion.

On February 24, 2023, Plaintiffs Craig Pederson and David Brown filed their Amended Complaint ("Complaint") alleging claims of negligence, breach of implied contract, breach of third-party beneficiary contract, unjust enrichment, invasion of privacy, and declaratory relief. Compl., ECF 19. Following the filing of a motion to dismiss, which the parties fully briefed, the Parties engaged in mediation under the guidance of mediator Jill R. Sperber, Esq. from Sperber Dispute Resolution, during which the parties were able to reach a settlement in principle. *See* Joint Declaration in Support of Plaintiffs' Unopposed Motion for Attorney Fees, Expenses, and Service Awards ("Joint Fee Decl."), ECF 45 ¶¶ 7-23; *see also* Joint Declaration of Plaintiffs' Proposed Class Counsel Supporting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Preliminary Approval Decl."), ECF 41-2 ¶¶ 10-20.

On October 6, 2023, the parties moved for preliminary approval and provided the Court with a copy of the executed Settlement Agreement. ECF 41, 41-1, 42. The Court granted preliminary approval on October 16, 2023. ECF 43.

**B. Attorneys' Fees, Expenses, and Class Representative Service Award**

On January 2, 2024, Plaintiffs filed their Unopposed Motion for Attorneys' Fees, Expenses, and Service Awards. ECF 44, 45. On January 18, 2024, the Court granted this motion, awarding attorneys' fees of $288,333.33, litigation expenses of $14,889.86, and providing service awards to Plaintiffs of $5,000 each ($10,000 total). ECF 49. Accordingly, the only outstanding expense that need be addressed in the final approval order is the cost and expense of Settlement Administration.

The Settlement Administrator has agreed to accept $107,802.00 as full payment for its fees and expenses incurred administering the notice and claims program. Settlement Admin Decl. ¶ 16. Class Counsel selected Analytics Consulting after reviewing its proposal and determining that it presented an efficient and effective method of class notice. Gould Decl. ¶ 8. Class Counsel believe the cost of settlement administration in this case was both necessary and reasonable. *Id.*

### C. The Notice Program and Settlement Administration

The Settlement Administrator complied with all of its previous representations and the requirements of the Court's preliminary approval order. On or about October 24, 2023, Analytics received Settlement Class Member data. Settlement Admin Decl. ¶ 5. The data included files containing 66,749 unique records of names and addresses of Settlement Class Members. *Id.* Analytics then deduplicated the class list and cross-referenced the Class Member addresses with the United States Postal Service National Change of Address database, ultimately determining that there are only approximately 60,316 Class Members. *Id.* ¶ 6. After updating the relevant addresses, on November 15, 2023, Analytics mailed the Court-approved Notice of Proposed Class Action Settlement to 60,267 Settlement Class Members with a valid mailing address available. *Id.* ¶ 7.

Before mailing the Notices, Analytics established a Settlement Website, www.AAADataSettlement.com, where Settlement Class Members could obtain copies of any important documents or information. *Id.* ¶ 9. The Settlement Website permitted Settlement Class Members to submit a claim form. *Id.* Analytics also established a toll-free phone number and a dedicated email box, info@AAADataSettlement.com, to receive and respond to Settlement Class Member inquiries. The phone number and email address were included in the Class Notice. *Id.* ¶ 10.

Through the date of this filing, 698 Notices were returned to Analytics by the U.S. Postal Service with a forwarding address. Analytics updated the Class List with the forwarding address and processed a re-mail of the Notice to the updated addresses. *Id.* ¶ 11. Through the date of this filing, another 12,201 Notices were returned to Analytics by the U.S. Postal Service without a forwarding address. *Id.* ¶ 12. In this case, Analytics conducted a skip trace in an attempt to ascertain a valid address for the affected Settlement Class Members. *Id.* As a result of these efforts, 4,924

new addresses were identified for Settlement Class Members. *Id.* Analytics subsequently updated the Class list with these new addresses and re-mailed the Notice to each of those addresses. *Id.*

### D. Claims, Opt-Outs, & Objections

The Class Members responded very favorably to the notice program. The deadline to object or request exclusion from the Settlement was January 15, 2024. To date, there have been zero (0) opt outs or objections. *Id.* ¶ 13.

The deadline for Class Members to submit a claim for cash benefits was February 13, 2024. In total, the Class Members have submitted 2,421 claims that are valid for at least one form of cash benefits. *Id.* ¶ 14. In other words, the notice program resulted in a valid claim rate of 4%. *Id.* This includes one (1) valid claim for out-of-pocket losses totaling $45.00, and 1,157 for lost time payments, totaling $107,395.00, and 2,371 valid claims for pro rata cash payments. *Id.* ¶¶ 15-16.

Because the Settlement is structured as a non-reversionary common fund, any funds remaining after the payment of fees, expenses, service awards, and other cash benefits will be disbursed pro rata amongst all individuals who submitted a valid claim. This means that if final approval is granted, each valid claimant will receive an additional roughly $141.96 on top of any other benefits they may be eligible for. *Id.* ¶ 16. Any funds remaining from uncashed checks or other unclaimed payments will be provided to one or more independent charitable *cy pres* recipients, which the parties shall jointly recommend for the Court's approval after reviewing the amount of unclaimed funds (if any). S.A., ECF 41-1 ¶ 43.

## III. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A. Plaintiffs and Class Members Satisfy the Requirements of Rule 23(A)

#### i. *Numerosity*

Numerosity is typically satisfied with a class that numbers at least 40 members. *See Hoekman v. Educ. Minnesota*, 335 F.R.D. 219, 242 (D. Minn. 2020) ("Generally, a putative class size of forty or more will support a finding of numerosity, although smaller classes have been found acceptable in this circuit."); *see also, Riedel v. XTO Energy, Inc.*, 257 F.R.D. 494, 508 (E.D. Ark. 2009) (similar). The Settlement Class contains more than 60,000 members. Gould Decl. ¶ 7. This more than satisfies the numerosity requirement.

### ii. Commonality

To certify the Settlement Class there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). Commonality is established where a class-wide proceeding may "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal citation omitted). "The rule does not require that every question of law or fact be common to every member of the class." *Paxton*, 688 F.2d at 561 (internal citations omitted). "The commonality requirement has been characterized as low hurdle easily surmounted." *Evans & Green, LLP v. Mortg. Depot, LLC*, No. 07-3275-CV-S-RED, 2008 WL 11338123, at *1 (W.D. Mo. May 28, 2008) (internal quotations and citation omitted). Indeed, "even a single common question will do." *Dukes*, 564 U.S. at 350 (internal citation omitted); *see also Abarca v. Werner Enters., Inc.*, No. 8:14-CV-319, 2018 WL 1136061, at *9 (D. Neb. Feb. 28, 2018) (same), *report & recommendation adopted*, 2018 WL 1392909 (D. Neb. Mar. 20, 2018).

Here, Plaintiffs' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Private Information. Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once. *See, e.g., Lutz v. Electromed, Inc.*, No. 21-CV-2198 (KMM/DTS), 2023 WL 4362813, at *2 (D.

Minn. July 6, 2023) (finding that commonality was satisfied under similar circumstances in data breach settlement).

### iii. Typicality

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This requirement is generally considered to be satisfied if the claims or defenses of the representatives of the class stem from a single event or are based on the same legal or remedial theory." *Heldt v. Payday Fin., LLC*, No. 3:13-CV-03023-RAL, 2016 WL 96156, at *8 (D.S.D. Jan. 8, 2016) (quoting *Paxton*, 688 F.2d at 561-62). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Heldt* at *8 (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

Here, the claims all involve Defendant's conduct toward the Settlement Class Members, and Plaintiffs' and the Class's claims are based on the same legal theories. Thus, Plaintiffs' claims are typical of those of the claims of the Settlement Class, and they are appropriate Settlement Class Representatives. *Komoroski v. Util. Serv. Partners Priv. Label, Inc.*, No. 4:16-cv-00294, 2017 WL 3261030, at *5 (W.D. Mo. July 31, 2017).

### iv. Adequacy

The requirement of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594; *see also Komoroski*, 2017 WL 3261030, at *6 (stating "to satisfy Rule 23(a)(4)'s typicality requirement, the named plaintiff must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotations and citation omitted)). Here, Plaintiffs have no conflict with the Settlement Class and have participated actively in the case. ECF 46 ¶¶ 4-7; ECF 47 ¶¶ 4-7. Moreover, Class Counsel has vigorously prosecuted this case on behalf of Plaintiffs and the Class,

and is comprised of attorneys from firms that are nationally recognized within the field of complex class action litigation, particularly within the field of data privacy. *See* Gould Decl. ¶ 3; Joint Preliminary Approval Decl., ECF 41-2 ¶¶ 29-40.

Moreover, Plaintiffs' Counsel have significant experience in data privacy class and complex litigation and are collectively participating as plaintiffs' counsel in dozens of data breach class actions in state and federal courts around the country. *See id.* Based on this experience, Plaintiffs' Counsel is qualified to undertake this litigation. *Komoroski*, 2017 WL 32160130, at *6 ("Absent evidence to the contrary, the court assumes class counsel is adequate.").

### B. Plaintiffs and Class Members Satisfy the Requirements of Rule 23(B)(3)

Certification is appropriate under Rule 23(b)(3) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591–94. These requirements are satisfied in this case.

#### i. *Predominance*

In analyzing the predominance factor, the United States Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 622. *See also, e.g., Avritt v. Reliastar Life Ins. Co.*, 614 F.3d 1023, 1029 (8th Cir. 2010) ("the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence."). This is satisfied where the questions that are capable of proof by generalized evidence "are more substantial than the issues subject only to individual proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In the settlement context, "the predominance inquiry will sometimes be easier to satisfy" because settlement eliminates manageability problems related to trial. *In re Am. Int'l Grp.,*

*Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). As further discussed by the court in *In re Am. Int'l Grp., Inc. Sec. Litig*:

> [S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context. A key question in a litigation class action is manageability—how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried. Conversely, other inquiries assumed heightened importance and heightened security because of the danger of conflicts, collusion, and unfair allocation.

*Id*. at 239 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011)).

The Eighth Circuit has held "the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Avritt*, 615 F.3d at 1029 (8th Cir. 2010). In this case, the common factual and legal questions all cut to the issues "at the heart of the litigation." Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member.

As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied. *See, e.g., Lutz*, 2023 WL 4362813, at *2 (holding in analogous circumstances that "questions of law or fact common to Class Members predominate over any questions affecting only individual members."); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022) (holding that predominance was satisfied because "each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants."). This case is no different.

### ii. Superiority

The second prong of Rule 23(b) is satisfied by the Settlement. As explained in *Amchem* and *In re Am. Int'l Grp., Inc., Sec., Litig.*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d at 239. Thus, any manageability problems that may have existed in this case are eliminated by the Settlement.

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 165 (D. Md. 2022) (describing consumer data breach actions as "the classic negative value case; if class certification is denied, class members will likely be precluded from bringing their claims individually because the cost to bring the claim outweighs the potential payout.") (citation omitted), *vacated & remanded on other grounds sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), *& reinstated by In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865 (D. Md. Nov. 29, 2023).

In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit for the Data Incident—at least not with the aid of competent counsel. *See id.* Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. *See id.* Because this matter is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for

settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial"). Thus, the Court should certify the Class pursuant to Rule 23(b)(3) as well.

### IV.  THE FORM AND MANNER OF NOTICE TO THE CLASS WAS REASONABLE AND SHOULD BE APPROVED

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable and sufficient notice. *Id.* at 176. Moreover, the settlement notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Notice need only satisfy the "broad 'reasonableness' standards imposed by due process." *Id.* (quoting *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 121 (8th Cir. 1975)).

The Notice Plan which was preliminarily approved by the Court (ECF 43) and executed by the Settlement Administrator was very successful. The manner of providing notice, which included individual notice by mail to all Class Members who could be reasonably identified, represented the best notice practicable under the circumstances and satisfied the requirements of due process and Rule 23. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004); *see also Weinberger v. Kendrick,* 698 F.2d 61, 71 (2d Cir. 1982) (notice sent to individuals' last known

address and notice published in the Wall Street Journal constituted adequate notice, even though some members of the class did not receive actual notice).

The Settlement Administrator estimates that it successfully provided direct notice to roughly 87.9% of Class Members. Settlement Admin Decl. ¶ 12. A notice reaching 70-95% of the class is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022) (citing Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf). The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the Settlement. The notice program satisfies the structures of Rule 23 and due process and should be approved by the Court.

## V.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

The law strongly favors resolving litigation through settlement, particularly in the class action context. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013); *Liddell v. Bd. Of Educ.*, 126 F.3d 1049, 1056 (8th Cir.1997). The Eighth Circuit has recognized that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (cleaned up). "Settlement agreements are presumptively valid, particularly where 'a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few

12

objectors.'" *In re Zurn Pex*, 2013 WL 716088, at *6 (cleaned up); *see also In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013); *Phillips v. Caliber Home Loans, Inc.*, No. 19-CV- 2711 (WMW/LIB), 2022 WL 832085, at *3 (D. Minn. Mar. 21, 2022).

In approving a settlement under Rule 23(e), "the district court acts as a fiduciary who must serve as guardian of the rights of absent class members." *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-cv-2863 (WMW/BRT), 2022 WL 872909, at *1 (D. Minn. Mar. 24, 2022) (citations omitted). Courts give "great weight" to the opinions of counsel and are "entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) ("The Court gives great weight to these opinions.").

In determining whether a class-action settlement should be approved as being a fair, reasonable, and adequate resolution of the case, the Eighth Circuit has instructed district courts to consider the following factors (the "*Van Horn* factors"):

> (a) the merits of the plaintiffs' case weighed against the terms of the settlement;
> (b) the defendant's financial condition;
> (c) the complexity and expense of further litigation; and
> (d) the amount of opposition to the settlement.

*See Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (listing factors from *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). Consistent with Eighth Circuit precedent, Rule 23 of the Federal Rules of Civil Procedure was recently amended and now requires that:

> the court may approve [a proposed class-action settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

      (A) the class representatives and class counsel have adequately represented the class;

      (B) the proposal was negotiated at arms'-length;

      (C) the relief provided for the class is adequate, taking into account:

          i.    the costs, risks, and delay of trial and appeal;

          ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims;

          iii.  the terms of any proposed award of attorney's fees, including timing of payment; and

          iv.  any agreement required to be identified under Rule 23(e)(3); and

   (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2), cited in *Resideo*, 2022 WL 872909, at *2. The single most important factor in determining whether a settlement is fair, reasonable, and adequate "is the balance of the settlement terms against the strength of plaintiff's case." *In re Airline Ticket C'mm'n Antitrust Litig.*, 953 F. Supp. 280, 282 (D. Minn. 1997) (citing *Van Horn*, 840 F.2d at 607). All the Rule 23(e) factors, plus additional factors sometimes considered by this Court and the Eighth Circuit, support granting final approval of the Settlement.

### A. The Class Representative and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires class representatives and class counsel to have adequately represented the class. Plaintiffs have devoted their time and resources in service to the Class. *See* Pederson Decl., ECF 46 ¶¶ 4-6, Brown Decl., ECF 47 ¶¶ 3-7. As also discussed above, Class Counsel worked quickly and efficiently to reach a fair, reasonable and adequate Settlement. *See generally* Joint Fee Decl., ECF 45. Ultimately, the value of the settlement achieved on behalf

14

of the Class in this case is better than or similar to analogous settlements throughout the country. *See* Gould Decl. ¶ 7.

### B. The Proposed Settlement is the Product of an Arm's-Length Negotiation Supported by Experienced Counsel

Settlement agreements are presumptively valid when the settlement has been negotiated at arm's-length, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objections. *George v. Uponor Corp.*, No. 12-cv-249 (ADM/JJK), 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 2015). Class Counsel are particularly experienced in data privacy litigation of this nature. *See* Gould Decl. ¶ 3; Joint Preliminary Approval Decl., ECF 41-2 ¶¶ 29-40. The parties engaged in extensive settlement negotiations after a full briefing of Defendant's Motion to Dismiss. Gould Decl. ¶ 4. The Settlement Agreement reached by the parties was negotiated at arms-length, is the result of hard bargaining, and provides all Settlement Class Members with the ability to receive cash payments due to their Private Information potentially being compromised in Defendant's Data Breach. *Id* ¶ 7. The Parties exchanged multiple rounds of negotiations over the course of several months, culminating in a highly contested mediation between the Parties in August 2023, where the parties were able to reach an agreement on the material terms of the Settlement. *Id.* ¶ 4. In the following weeks, the Parties continued to engage in zealous negotiations over the remaining terms to finalize the Settlement. *Id.* Moreover, the Class response to the Settlement has been very favorable, with a roughly 4% claims rate and zero opt outs or objections. *See* Gould Decl. ¶¶ 9, 11.

### C. The Relief Provided for the Class is Adequate

In determining whether the relief provided for the Class is adequate, courts look to (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). All these factors support granting final approval of the Settlement.

All Class Members submitting a valid claim will receive cash benefits for their damages. If settlement was not obtained, the Parties would have engaged in extensive discovery. Plaintiffs would have moved for class certification under Rule 23 and then summary judgment. Defendant would have likely contested both motions. If Defendant had prevailed on preventing class certification, Plaintiffs' recovery would be limited solely to their damages, or a small fraction of the current Settlement Fund. As it stands, the Settlement provides significant benefits to the Settlement Class, especially in light of possible defenses. The $865,000 Settlement Fund represents an excellent result and provides monetary relief for all Class Members that is similar to or better than other data breach settlements throughout the country. *See* Gould Decl. ¶¶ 7-9.

Because an action maintained as a class suit under Rule 23 has a res judicata effect on all members of the class, due process required that notice of a proposed settlement be provided to settlement class members. *Phillips v. Caliber Home Loans, Inc.*, No. 19-cv- 2711 (WMW/LIB), 2021 WL 3030648, at *7 (D. Minn. July 19, 2021) (citing *Eisen*, 417 U.S. at 172-77). The Notice Plan and explanation of the process to opt out of this Settlement meet due-process requirements. The notice explains the action, who is included in the case, and plainly and concisely informs Class Members of the amount of the Settlement Fund; specifically, that they may do nothing and be bound by the Settlement, exclude themselves by completing the exclusion form and not be bound by the Settlement, or make a claim by completing and returning a claim form and be bound by the Settlement.

Class Members have had an overwhelmingly positive response to the Settlement after receiving notice pursuant to the Notice Plan that conformed to due process and this Court's order granting preliminary approval of the settlement. *See* Gould Decl. ¶¶ 7-9; *see also Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("[A] claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness."). Of the roughly 60,316 Class Members, there were no objections or requests for exclusion. *See* Gould Decl. ¶ 11.

The terms of any attorneys' fee award, including the timing of payment, is a factor requiring analysis under Fed. R. Civ. P. 23(e)(2)(C). As set forth in Plaintiffs' Motion and Memorandum in Support of Attorneys' Fees, Expenses and Class Representative Service Award, and already approved by this Court, Class Counsel will receive attorneys' fees of one-third (1/3) the Settlement Fund (i.e., $288,333.33), and for reimbursement of litigation costs and expenses of $14,899.86. ECF 49. Plaintiffs also requested service awards of $5,000 each in recognition of their service to the class, which were ordered. *Id.*

For all these reasons, the relief provided to the Class is fair, reasonable, and adequate, and supports granting final approval of the Settlement.

### D. The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others. Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ P. 23(e)(2)(D), 2018 advisory cmt. note.

There are no such concerns here. Beyond Plaintiffs' Service Award, the Settlement provides valuable services to all Class Members. In all other aspects, apportionment among Class Members, per the plan of distribution, will result in equitable treatment of all. This factor is fair, reasonable, and adequate, and further supports granting final approval.

### E. Defendant's Financial Condition is a Neutral Factor

Finally, the defendant's financial condition is often considered neutral when, as here, the Defendant's ability to pay is not an issue. *Dryer v. Nat'l Football League*, No. 09-2182 (PAM/AJB), 2013 WL 5888231, at *4 (D. Minn. Nov. 1, 2013). "However, just because defendants could pay more does not necessarily mean they should have to pay more than the parties negotiated to settle these claims." *Zanghi v. Freightcar Am., Inc.*, No. 3:13-cv-146, 2016 WL 223721, at *19 (W.D. Pa. Jan. 19, 2016).

Because the settlement is appropriate on the merits of the case and is not reduced to account for any collectability concerns, the Parties did not evaluate Defendant's solvency. Thus, this is a neutral factor. Plaintiffs and Class Counsel are not aware of any facts that suggest Defendant will be unable to pay the full amount of the Settlement Fund.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests the Court enter an Order: (1) granting final certification of the proposed Settlement Class; (2) granting final approval of the proposed Settlement; (3) finding that notice has been conducted in accordance with the Court-approved notice plan and due process; and (4) dismissing with prejudice Plaintiffs' and Class Members' claims against Defendant.

Date: March 11, 2024

Respectfully Submitted,

*/s/ Pamela R. Reiter*
Pamela R. Reiter
Anthony P. Sutton

**REITER LAW FIRM, LLC**
5032 S. Bur Oak Place, Suite 205
Sioux Falls, SD 57108
Phone: 605-705-2900
pamela@reiterlawfirmsd.com
anthony@reiterlawfirmsd.com

Terence R, Coates*
Jonathan T. Deters*
Dylan J. Gould*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513.651.3700
Facsimile: 513.665.0219
tcoates@msdlegal.com
jdeters@msdlegal.com
dgould@msdlegal.com

Joseph M. Lyon*
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax:(513) 766-9011
jlyon@thelyonfirm.com

Raina C. Borrelli*
**TURKE & STRAUSS, LLP**
613 Williamson St., Suite 201
Madison, WI 53703
Telephone (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com

*\*Pro Hac Vice*

*Attorneys for Plaintiffs and Class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                        */s/ Pamela R. Reiter*
                                        Pamela R. Reiter